NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOSEPH L. CALDERON,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2024-1837

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 23-6177, Judge Scott Laurer.

---

Decided: January 28, 2026

---

SHYAM SHANKER, Dechert LLP, Charlotte, NC, argued for claimant-appellant. Also represented by KATHERINE A. HELM, New York, NY.

NATHANAEL YALE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, ERIC P. BRUSKIN, PATRICIA M. MCCARTHY, BRETT SHUMATE; CARLING KAY BENNETT,

DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before REYNA, WALLACH, and HUGHES, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Claimant-Appellant, Joseph L. Calderon, ("Appellant" or "Mr. Calderon") appeals the Order of the Court of Appeals for Veterans Claims ("CAVC" or "Veterans Court"). The CAVC dismissed Mr. Calderon's appeal for untimeliness because his Notice of Appeal ("NOA") was filed after the deadline. In doing so, the CAVC denied Mr. Calderon equitable tolling relief.[1] This court has jurisdiction pursuant to 38 U.S.C. § 7292. We hold that the CAVC did not legally err in determining that equitable tolling does not apply in Mr. Calderon's appeal, and the CAVC correctly granted the Respondent-Appellee's ("the Secretary's") Motion to Dismiss. Accordingly, we affirm.

## I.    FACTS

### A.

Mr. Calderon deployed with the U.S. Army Reserves to Panama in 1990. While deployed to Panama, Mr. Calderon was stopped at a checkpoint by armed members of the Panamanian Civil Forces, who detained and assaulted him, causing him to lose consciousness. Mr. Calderon alleges his mental health conditions stem from this trauma. Mr. Calderon sought service connection for his mental illness due to these events.

On March 27, 2023, the Board of Veterans' Appeals ("Board") denied Mr. Calderon's request for service

_____

[1] The CAVC Order is in the record at Appx2–5 and reported as *Calderon v. McDonough*, No. 23-6177, 2024 WL 396644 (Vet. App. Feb. 2, 2024).

connection for an acquired psychiatric disorder, including posttraumatic stress disorder ("PTSD"), depression, and anxiety. On October 2, 2023, Mr. Calderon filed an NOA of the Board's decision with the CAVC. His appeal was filed 69 days after the applicable, 120-day deadline. Accordingly, the Secretary filed a motion to dismiss the case due to an untimely NOA. The CAVC dismissed Mr. Calderon's appeal. Mr. Calderon's appeal to this Court followed.[2]

## B.

Between the Board's denial and Mr. Calderon filing his NOA, Mr. Calderon experienced numerous challenging events in his life that he alleges were "extraordinary circumstances." These include that: from March 22 to April 4, 2023, he traveled to Mexico to care for his ailing father. From April 4 to May 30, 2023, he cared for his father at home until his father was accepted into a medical care facility. From May 1 to May 3, Mr. Calderon's wife was in the hospital for surgery. Later that month, she had a postoperative infection requiring treatment through May 30. His wife contracted COVID-19 on August 15, 2023, suffered from a cellulitis infection two days after that, and had an allergic reaction to medication later that month. His father passed away on August 30, 2023. Shortly thereafter, in early September, Mr. Calderon and his wife contracted COVID-19. Mr. Calderon also stated that he had been caring for his mother since May 2018, but that his mother's health began declining around June 2023 and that she passed away on December 1, 2023. Mr. Calderon indicated that he was unable to recall the exact date that he realized

---

[2] There were several, additional intervening events on the docket of the CAVC case that occurred between when Calderon's NOA was filed, and the instant appeal was docketed—such as show-cause-for-untimeliness briefing, and Calderon's motion-for-reconsideration briefing—that are unnecessary to discuss at length.

he had missed his filing deadline. He filed his notice of appeal on October 2, 2023.

## II.   LEGAL STANDARDS

### A.

We have jurisdiction pursuant to 38 U.S.C. § 7292 to review "the validity of a decision of the [CAVC] on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the [CAVC] in making the decision." 38 U.S.C. § 7292(a). The availability of equitable tolling is a question of law that we are authorized by statute to address. *James v. Wilkie*, 917 F.3d 1368, 1372 (Fed. Cir. 2019). This Court "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).

### B.

Equitable tolling due to extraordinary circumstances is warranted where the claimant demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and citation omitted). In other words, the claimant must demonstrate: "(1) extraordinary circumstance; (2) due diligence; and (3) causation." *Checo v. Shinseki*, 748 F.3d 1373, 1378 (Fed. Cir. 2014).

To obtain the benefit of equitable tolling for mental illness, "a veteran must show that the failure to file was the direct result of a mental illness that rendered him incapable of rational thought or deliberate decision making, or incapable of handling [his] own affairs or unable to function [in] society." *Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004) (*Barrett I*) (alteration in original) (internal quotation marks and citations omitted).

## III.    DISCUSSION

Mr. Calderon challenges, on four grounds, the CAVC's determination that the criteria for equitable tolling had not been satisfied.  As we explain below, we disagree with Mr. Calderon on each contested ground.

### A.

In the first ground on which Mr. Calderon challenges the CAVC Order, Mr. Calderon argues the CAVC failed in its analysis of "extraordinary circumstances" for equitable tolling, by allegedly improperly adopting a categorical rule barring the application of equitable tolling to Mr. Calderon, and allegedly failing to consider all of the bases he raised for "extraordinary circumstances."  The Secretary responds that the CAVC evaluated the facts presented in the record and did not improperly limit its extraordinary circumstance analysis.  We disagree with Mr. Calderon.

Mr. Calderon's first argument, that the CAVC allegedly improperly adopted a categorical rule, is based on language, which Mr. Calderon quotes, from the CAVC Order:

> Appellant has explained that he made an immediate effort to file his NOA once he discovered it was late, but he doesn't account for the time period after he stopped providing in-home care for his father. *And the Court is unconvinced that appellant's caring for his sick parent is an extraordinary circumstance warranting equitable tolling.*

Appx4 (emphasis added) (footnote omitted) (cited in Grey Br. 4).  Mr. Calderon argues the CAVC created a categorical rule because allegedly the CAVC lacked a "rationale" other than that it was "unconvinced," Grey Br. 4, and the CAVC "never addressed whether Mr. Calderon's in-home care for his mother from June to December 2023 was an extraordinary circumstance," Grey Br. 5.

The Secretary disagrees. First, the Secretary cites to the text of the CAVC Order itself. The CAVC "simply found that in this case '*appellant's* caring for *his* sick parent' did not prevent him from timely filing his notice of appeal." Red Br. 13 (emphasis in original) (citing Appx4). As to the argument that the CAVC did not consider Calderon's care for his mother, the Secretary responds that there is no statute or rule that requires the CAVC to provide an exhaustive written discussion as to each issue. "[T]his Court can presume that the [CAVC] considered and rejected" any of Mr. Calderon's specific arguments regarding which it did not go into detail. Red Br. 13–14.

We cannot reject the CAVC's determination of the facts. While the language of the Order could have been clearer, we agree with the Secretary that the CAVC did not apply an improperly categorical rule. Mr. Calderon has no concrete basis for his allegation. The plain language of the Order applies to only Mr. Calderon's facts, referring to "*appellant's* caring for *his* sick parent." Appx4 (emphasis added). Linguistically, this is distinct from the *James* case cited by Mr. Calderon, where this Court reversed the CAVC for applying a categorical rule. *Cf. James v. Wilkie*, 917 F.3d at 1373 (reversing CAVC for having categorically "held 'that a fallen mailbox flag is not an extraordinary circumstance beyond [Mr. James]'s control that warrants equitable tolling.'" (citation omitted)). *See generally* Blue Br. 23; Oral Arg. at 14:17–28 (available at https://www.cafc.uscourts.gov/oral-arguments/24-1837_01062026.mp3). Furthermore, that the CAVC cited correct legal principles for individualized analyses reinforces that the CAVC was aware of, and complied with, the rule to use an individualized approach. Furthermore, elsewhere in its Order, the CAVC cited specific facts of Mr. Calderon's situation, including those pertaining to the conditions of his father and mother, which further buttresses that the CAVC took an individualized approach.

Appx2.  We lack jurisdiction to disturb the CAVC's findings.

### B.

Next, Mr. Calderon argues the CAVC's determination that, on Mr. Calderon's facts, the criteria for equitable tolling had not been satisfied, was erroneous because it considered his diligence at inapplicable time periods.  Blue Br. 26–29.

We need not reach Mr. Calderon's argument about diligence in light of our conclusion that the CAVC did not err in finding a lack of extraordinary circumstance throughout the pendency of the NOA-filing deadline while Mr. Calderon was in the United States.  Mr. Calderon's failure to establish an extraordinary circumstance that prevented him from timely filing his appeal (beyond being out of the country for the first nine days) is a failure to satisfy an element of equitable tolling; thus, it is dispositive.  *See Menominee Tribe v. United States*, 577 U.S. 250, 255–56 (2016) (expressly characterizing equitable tolling's two components—diligence and extraordinary circumstances—as "'elements,' not merely factors[.]").

### C.

In the third ground on which he challenges the CAVC Order, Mr. Calderon argues the CAVC failed in its analysis of mental illness for equitable tolling, by only applying one part of the two-part test for mental illness under *Barrett I*. 363 F.3d 1316.

The *Barrett I* test for whether mental illness may justify equitable tolling is whether the mental illness renders the veteran incapable of: **_(1)_** "rational thought or deliberate decision making" **_or (2)_** "handling [his] own affairs or unable to function [in] society."  *Id.* at 1321 (alteration in original) (citations omitted).  Mr. Calderon alleges the CAVC only considered the latter prong.  Specifically, Mr. Calderon quotes the CAVC's articulation of his burden as:

"appellant has the burden of proving that the 'particular infirmity' caused him to be 'incapable of handling [his] own affairs or unable to function [in] society,'" Appx4, and made a finding that his set of PTSD symptoms (lack of sleep and forgetfulness) "doesn't rise to the level of showing that he couldn't handle his own affairs," Appx4. Mr. Calderon alleges this shows the legal test was "partially applied." Grey Br. 17.

We disagree with Mr. Calderon and conclude that the CAVC did not misapply *Barrett I*'s test. The CAVC is not required to provide a complete written discussion as to each issue. Additionally, Mr. Calderon's undisputed provision of constant home-care to his ill parents, and travel out of the United States, during the period foreclose any further inquiry into tolling based on an inability to engage in rational thought.

### D.

Finally, Mr. Calderon argues that the Secretary should have provided to the CAVC Mr. Calderon's Health records from the Department of Veterans Affairs ("VA") that the Board relied upon in its dismissal order. Specifically, Mr. Calderon identifies records that the Board decision cited, but which were not provided by the Secretary to Mr. Calderon or the CAVC—namely, as the Board referred to them: "March 2014 VA treatment record"; "June 2014 VA examination report"; "June 2014 PTSD DBQ," indicating a "long history of depression since 1986"; "June 2017 VA treatment record"; "May 2020 medical opinion"; "June 2014 VA examination"; "December 2020 medical opinion" (singular); "December 2020 medical opinions" (plural); and "December 2020 private medical opinions." *See generally* Blue Br. 9 (listing records); Blue Br. 40 (same). Mr. Calderon argues that failing to provide those records, and the CAVC ruling on the appeal without them, was reversible error.

Mr. Calderon relies on this Court's holdings in *Barrett II* and cases extending *Barrett II* that "the government must provide the Veterans Court (and the veteran) all records in its possession relevant to" a veteran's entitlement to equitable tolling. Grey Br. 18; *see Barrett v. Nicholson*, 466 F.3d 1038, 1043–44 (Fed. Cir. 2006) ("*Barrett II*"); *see also, e.g.*, *Dixon v. Shinseki*, 741 F.3d 1367, 1373 (Fed. Cir. 2014); *see generally* Oral Arg. at 1:39–2:45. Mr. Calderon adds that it is unfair for him to have had the burden to produce evidence necessary to support tolling when defending against the motion to dismiss, but not to be informed that he was entitled to, or to be given, documents in the VA's possession that he says are relevant to the dispute. Mr. Calderon argues that this Court should consider his *Barrett II* argument on appeal in the interest of justice, even though he did not request the records or make this argument at the CAVC itself. Grey Br. 21–24.

The Secretary offers multiple arguments in response to the *Barrett II*-records argument. First, the Secretary argues that Mr. Calderon's *Barrett II* argument was "forfeited" because he did not raise it with the CAVC. Further, the VA's duty to provide records was not triggered because the CAVC did not request or determine that it needed additional records when it ruled on Mr. Calderon's appeal; nor did Mr. Calderon request his VA medical records at any time.

Mr. Calderon argues that one of the reasons this Court should consider the records issue now is because he was "*pro se* before the Veterans Court." However, as Mr. Calderon also acknowledges, he had counsel for a reconsideration motion at CAVC, but he did not raise the issue there.

Even if properly presented, Mr. Calderon's argument merely disputes the CAVC's exercise of its discretion to decide the case based on the parties' submitted pleadings and submitted evidence (as opposed to ordering additional briefing or evidentiary submissions). Thus, Mr. Calderon

challenges the application of law to the facts of the case and raises no issue within this Court's jurisdiction.  Additionally, it is worth repeating that Mr. Calderon did not request the documents, despite their listing in the Board Decision. Appx18–22.

## IV.    CONCLUSION

We have considered Mr. Calderon's remaining arguments, and do not find them persuasive or do not need to reach them.  Therefore, for the foregoing reasons, the decision of the CAVC is:

**AFFIRMED.**